**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**RONALD LEE LUDWICK, JR.,**

Plaintiff,

**v.**                                            **Civil Action No.: 2:15-CV-61
(Judge Bailey)**

**JIM RUBENSTEIN, Commissioner
Of Corrections; MARVIN PLUMLEY,
Warden; JOHN MURPHY, Deputy
Warden; MIKE SMITH, Unit Manager;
ROBERT KESLEY, LT., JUSTIN CLOSE,
CPL., JEREMY LATHAM, Position Officer;
SIDNEY FEASTER, Position Officer;
RICHARD GSELL, Position Officer;
TREAVOR PHILLIPS, Position Officer;
R. DAVIS, Position Officer; C. CAUGHIN,
Position Officer; and SHANNON
SHIFFLETT,**

Defendants.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On August 10, 2015, the *pro* se Plaintiff, Ronald Lee Ludwick, filed this civil

rights matter pursuant to 42 U.S.C. § 1983 against the above named defendants

raising multiple complaints about his confinement at Huttonsville Correctional

Center ("HCC") during the months of March through July of 2015. Plaintiff was

subsequently transferred to Mount Olive Correctional Center ("MOCC") shortly after

the complaint was filed. ECF No. 13. However, by February 23, 2017, Plaintiff was

again housed at HCC [ECF No. 74], where he remains incarcerated. ECF No. 86.

1

On October 19, 2015, Plaintiff filed a Motion to Amend and Supplement his Complaint [ECF No. 16] and attached a Proposed Amended Complaint. ECF No. 16-1. On December 4, 2015, the Plaintiff's motion was granted, and the Clerk of Court was directed to file the proposed amended complaint.  On August 23, 2016, the undersigned conducted a preliminary review of the Amended Complaint and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered [ECF No. 22], and summonses were issued. ECF No. 23.

On September 19, 2016, Defendants Kesling[1], Close, Latham, Feaster, Gsell, Phillips, Davis, Caughin/Hawthon[2], and Shifflett filed an Answer to the Amended Complaint.  ECF No. 42.  On October 17, 2016, Defendants Rubenstein, Plumley, Murphy, and Smith filed a Motion to Dismiss for failure to state a claim or, in the alternative, Motion for Summary Judgment [ECF No. 52], together with a Memorandum of Law in support. ECF No. 53.   On October 31, 2016 and November 17, 2016, Plaintiff filed Responses to the Motion to Dismiss or, in the alternative Motion for Summary Judgment. ECF No. 58 & 59. On December 1, 2016, Defendants Rubenstein, Plumley, Murphy, and Smith filed a reply to Plaintiff's Responses to Defendant Motion to Dismiss or Alternatively, Motion for Summary Judgment[3]. ECF No. 61. On January 20, 2017, Defendants, Latham, Feaster, Gsell, Phillips, Davis and

---

[1] According to Defendant's Answer filed on September 19, 2016, Robert Kesling is incorrectly identified as Robert Kesley in the Amended Complaint.  Hereinafter, Robert Kesley will be referred to as Kesling.

[2]  Cody Hawthon was incorrectly identified in the Amended Complaint as C. Caughhin. Therefore, Defendant Caughhin will hereinafter be referred to as Caughin/Hawthon.

[3] Defendants Reply [ECF No. 61] is discussed further in II. Contention of Parties, E1.

Caughin/Hawthon filed a Motion for Summary Judgment. ECF No. 66. On March 9, 2017, the Plaintiff filed a response to the Motion for Summary Judgment.  ECF No. 77. On March 16, 2017, Defendants Latham, Feaster, Gsell, Phillips, Davis and Caughin/Hawthon filed a reply to Plaintiff's response. ECF No. 82. Finally, on July 13, 2017, Plaintiff filed a Letter which was a docketed as a Motion for a Temporary Injunction in which he seeks an Order that he be housed in a facility other than HCC. ECF No. 86.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned recommends that the Amended Complaint be dismissed as to Defendants Rubenstein, Plumley, Murphy, Smith, Kesling, Latham, Feaster, Gsell, Phillips, Davis, and Caughin/Hawthon. Further, the undersigned recommends that Counts II, III and IV of the Amended Complaint be dismissed.  Finally, the undersigned recommended that the claims in Count I and Count V shall remain against Defendant Close and the claims in County V shall remain against Defendant Shifflett, and that this matter should proceed to trial accordingly.

## II.    Contention of Parties

### A.    Amended Complaint [ECF No. 18]

Plaintiff's claims can be summarized as follows: (a) the utilization of chemical spray or "pepper spray" on May 30, 2015, by Close, which Plaintiff argues constitutes excessive use of force.  See ECF No. 18 at ¶¶ 32-33; (b) seizure, destruction and deprivation of his religious materials. Id at ¶¶15-17, 18-28, 30, 36-43

3

and 46-49; (c) denial of his medications. Id. ¶¶ 15-16, 36-43; and 46-49; and (d) harassment and retaliation. Id. ¶¶ 15-16, 18-49.

The amended Complaint contains five counts. In Count I, Plaintiff is seeking to recover damages for use of force. In Count II, Plaintiff is seeking to recover damages for supervisory liability. In Count III, Plaintiff is seeking to recover damages for denial of his medication. In Count IV, Plaintiff is seeking damages under both the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the First and Fourteenth Amendments for destruction and denial of access to his religious materials.  In Count V, Plaintiff is seeking to recover damages for retaliation.

**B. Defendants Rubenstein, Plumley, Murphy, and Smith's Motion to Dismiss or alternatively, Motion for Summary Judgment. [ECF No. 52].**

The above named Defendants claim that Plaintiff has asserted no personal involvement on their part except for the handling of the grievances. ECF No. 53. Defendants assert that Plaintiff's grievances were addressed on the merits, and the correctional officers' actions were appropriate responses to Plaintiff's wrongdoing.  Id. Further, Defendants allege that Plaintiff has shown no injury or harm caused by Defendants and therefore, his claims should be dismissed. Id.

**C. Defendants Latham, Feaster, Gsell, Phillips, Davis and Caughin/Hawthon Motion for Summary Judgment. [ECF No. 66].**

Defendants Latham, Feaster, Gsell, Phillips, Davis and Caughin/Hawthon assert that Plaintiff has failed to allege any facts implicating them in the alleged violations of his constitutional rights and therefore, Plaintiff's claims must fail as a matter of law. ECF No. 67 at 2. Defendants Gsell and Phillips were mentioned in the amended

complaint, however, Defendants argue that the allegations were conclusory at best without sufficient facts to support a violation of constitutional rights claim.  ECF No. 67 at 3. Further, Defendants allege that Plaintiff has shown no injury or harm caused by Defendants and therefore, his claims should be dismissed. Id.

### D. Plaintiff's Responses to Motions [ECF No. 58, 59 & 77]

### 1. Plaintiff's Responses [ECF No. 58 & 59] to Motion [ECF No. 52].

Plaintiff asks the court to consider the Defendants' [Rubenstein, Plumley, Murphy, and Smith] Motion to Dismiss in the alternative as a Motion for Summary Judgment. Plaintiff asserts a *respondeat superior* claim or alternatively a vicarious liability claim against the Defendants named in the Motion to Dismiss because they had direct knowledge of what was happening and supervised those individuals who committed the offenses.

### 2. Plaintiff's Response [ECF No. 77] to Motion [ECF No. 66].

As for the Response [ECF No. 77] to the Motion for Summary Judgment, the Plaintiff merely reasserts facts already alleged in his original Complaint [ECF No. 1] and Amended Complaint [ECF No. 18].

### E. Defendants' Replies to Plaintiff's Responses [ECF No. 61 and 82]

### 1. Reply of Defendants Rubenstein, Plumley, Murphy and Smith [ECF No. 61]

Defendants Rubenstein, Plumley, Murphy and Smith filed a Motion to Strike Plaintiff's Response Brief, or in the alternative, Reply to Plaintiff's Response to their Motion to Dismiss.  As part of Defendants' Reply, Defendants request that Plaintiff's Response [ECF No. 59] be stricken from the docket as untimely.  The Court denies

Defendants request.  Further, Defendants assert that Plaintiff is attempting to amend his Complaint in the Response to sue all defendants in their individual and official capacity.  However, in the Amended Complaint, Plaintiff asserts that all Defendants are being sued in their individual and official capacities.  ECF No. 18 at 4, ¶¶9, 10.

Regardless, as pro se filings are to be liberally construed, if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). Accordingly, the Court will review the complaint against the Defendants both in their individual and official capacities.

### 2. Reply of Defendants Latham, Feaster, Gsell, Phillips, Davis or Caughin/Hawthon [ECF No. 82]

Plaintiff does not assert that Defendants [Latham, Feaster, Gsell, Phillips, Davis or Caughin/Hawthon] were involved in the use of force claim advanced in Count I. Plaintiff advances a supervisory liability theory of recovery in Count II, but there are no allegations that these Defendants were supervisors or acting as supervisors at the relevant times.   As for Plaintiff's Count III denial of medication theory, there is no evidence that Defendants Feaster, or Davis were personally involved in any of the incidents that allegedly led to the preparation of the violation report. Likewise, claims against Defendants Gsell, Latham and Phillips should be dismissed as the officers had legitimate reasons for reporting each of Plaintiff's violations. ECF No. 82 at 4.

## III. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive

7

dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is material depends upon the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The Court cannot assume the existence of a genuine issue of material fact where none exists. Fed.R.Civ.P 56(c).

Motions for summary judgment impose a difficult standard on the moving party

8

because it must be obvious that no rational trier of fact could find for the nonmoving party.  Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990).  In applying the standard for summary judgment, a court must review all the evidence "in the light most favorable to the nonmoving party."  Celotex Corp., 477 U.S. at 322-23.  The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact.  Celotex, 477 U.S. at 323.  Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The nonmoving party must present specific facts showing the existence of a genuine issue for trial.  Id.  This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment.  Id. at 248.  To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]."  Id.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987).  Such evidence must consist of facts which are material, meaning that they create fair

9

doubt rather than encourage mere speculation.  Anderson, 477 U.S. at 248.  Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita, 475 U.S. at 587 (citation omitted).

**C.     42 U.S.C. §1983**

42 U.S.C.§ 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage.....subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights...secured by the Constitution and laws, shall be liable to the party injured in any action at law...or suit in equity.

Therefore, the initial inquiry in a § 1983 case is as follows: (1) was the conduct complained of committed by a person acting under the color of state law and (2) did that conduct deprive the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Hale v. Tallapoosa County, 50 F.3d 1579 (11th Cir. 1995); Harvey v. Harvey, 949 F. 2d 1127, 1130 (11th Cir. 1992).

Whether a constitutional right is alleged to have been violated is usually clear, but the under color of law requirement has been subject to more debate.  "As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 50 (1988)); see also Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 936 n.18 (1982) (finding that "state employment is generally sufficient to render the defendant a state actor").  Accordingly, any person acting with a badge of authority given to them by virtue of their position with the state who violates a person's constitutional rights is subject to liability for the

10

unconstitutional act.  See West, 487 U.S. at 49 (citing United States v. Classic, 313 U.S. 299, 326 (1941)); see also Monroe v. Pape, 365 U.S. 167, 187 (1961).

## IV. ANALYSIS

### A.    The Defendants

Plaintiff has named the following Defendants in the Amended Complaint: (1) Rubenstein, Commissioner of Corrections; (2) Plumley, Warden; (3) Murphy, Deputy Warden; (4) Smith, Unit Manager; (5) Kesling, Lt.; (6) Close, Cpl.; (7) Latham, officer; (8) Feaster, officer; (9) Gsell, officer; (10) Phillips, officer; (11) Davis, officer; (12) C. Caughin/Hawthon, officer; (13) Shifflett, counselor. ECF No. 18. Plaintiff is suing these Defendants in their individual and official capacities. Id.

The undersigned finds that Plaintiff's claims against the Defendants in their official capacities are improper. A defendant in a Section 1983 action must be a "person" acting under color of state law. 42 U.S.C. § 1983. However, "neither a State nor its officials acting in their official capacities are "persons" under [Section] 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's claims against Defendants in their official capacities should be dismissed. Accordingly, the undersigned will examine Plaintiff's claims against the Defendants in their individual capacities.[4]

### 1.    Plaintiff's Claims against Defendants Rubenstein, Plumley, Murphy, Smith and Kesling

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff

---

[4] The undersigned also notes that Defendants assert that Plaintiff has failed to exhaust his administrative remedies with regard to some of his claims. ECF No. 52 at 1-2. Notwithstanding this argument, for the sake of completeness, the undersigned will analyze each of Plaintiff's claims.

must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).   As stated by the Fourth Circuit, because there is no *respondeat superior* liability under § 1983, supervisory liability lies only "where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997) (citing Bennett v. Gravelle, 323 F.Supp. 203, 214 (D. Md. 1971) aff'd 451 F.2d 1011 (4th Cir. 1971); Harris v. City of Virginia Beach, 11 Fed. Appx. 212, 215 (4th Cir. 2001).   Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible.   Fisher v. Washington Metropolitan Area Transit Authority, 690 F. 2d 1133 (4th Cir. 1982) (abrogated on other grounds by County of Riverside v. McLaughlin, 500 U.S. 44 (1991)).

In order to succeed on a §1983 claim for supervisory liability, a plaintiff must show:

(1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff,

(2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and

(3) that there was an 'affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (internal citations omitted).

12

A Plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses," however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." Shaw, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." Id.

The undersigned finds that Plaintiff's claims against Defendants Rubenstein, Plumley, Murphy, Smith and Kesling[5] are improper. Plaintiff asserts no personal involvement on the part of Defendants in the alleged violation of his constitutional rights. For example, Plaintiff does not assert that Defendants Rubenstein, Plumley, Murphy and Smith were involved in the use of the alleged force. Nor did these Defendants have any direct involvement in any purported denial of medication or destruction or denial of religious materials. Instead, Plaintiff attempts to establish supervisory liability alleging deliberate indifference; failing to investigate grievances and alleged misconduct; and failing to properly train, supervise and discipline Huttonsville guards. However, Plaintiff has not met the prerequisites for establishing supervisor liability. There are no specific allegations against these Defendants other than with respect to the handling of Plaintiff's discipline and grievances by Smith and Kesling and the adjudication of Plaintiff's appeals of those grievances by Defendants Murphy, Plumley and Rubenstein.

Although Plaintiff has shown that these Defendants had actual or constructive knowledge of the alleged violations that occurred by virtue of their review of his

---

[5] Although Kesling is not named in the Motion [ECF No. 52] to Dismiss, or alternatively, Motion for Summary Judgment or in the Motion [ECF No. 66] Motion for Summary Judgment, the undersigned recommends dismissal of the Amended Complaint as to him for the reasons set forth in this section and in section C.2. below.

grievances, he has not shown the violations were constitutional in nature nor has he shown that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices.  In fact, the attachments show that Defendants Smith and Kesling were responsive to each grievance submitted by the Defendant. Each grievance was addressed by Defendant Smith with references to the policy directive on the issue. Additionally, Plaintiff has not shown that there was an "affirmative causal link" between the supervisor's alleged inaction and the particular constitutional injury suffered by the plaintiff.

Therefore, Plaintiff's claims against Defendants Rubenstein, Plumley, Murphy, Smith and Kesling and must fail and the Amended Complaint against them be dismissed.

### 2.  Plaintiff's Claims against Defendants Latham, Feaster, Gsell, Phillips, Davis and Caughin/Hawthon

Again, liability under 42 U.S.C. § 1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001) (internal citation omitted). Thus, in order to establish liability under Section 1983, a plaintiff must specify the acts taken by each defendant which violate his or her constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Plaintiff has failed to allege sufficient facts indicating personal involvement of the above defendants in the alleged denial of his constitutional rights other than conclusory statements.  Throughout their memorandum, Defendants Latham, Feaster and Davis point to the specific paragraphs in the Amended Complaint in which Defendants are mentioned. ECF No. 67 at 6.  After

14

a review of the Amended Complaint regarding Defendants Latham, Feaster, Davis, and Caughin/Hawthon, the Court finds the allegations have no specific factual assertions but are merely conclusory in nature. Defendants Latham and Feaster are mentioned in a Violation Report dated May 28, 2017, where they conducted a contraband search of Plaintiff's cell after smelling smoke. See Ex. C, ECF No. 18-3.  Defendants Latham and Feaster found a paper clip and three hand rolled cigarettes under the bed and two small pieces of razor blade.  Id.

As for Defendants Gsell and Phillips, paragraph 30 of the Amended Complaint provides that these defendants came to Plaintiff's cell and ordered him to strip out and cuff up on May 29, 2015. ECF No. 18 at 9.   When Plaintiff refused to comply, Defendants Gsell and Phillips said that if they had to tell him again he would be sprayed.  Id. During the strip search, Defendants Gsell and Phillips found a piece of a razor blade.   See. Exhibit D and E, ECF No. 18-4, 18-5. Plaintiff has shown no constitutional violation in these assertions nor any injury or harm caused by Defendants.

A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. Clearly, Plaintiff did not assert any factual allegations against Defendants Latham, Feaster, Davis and Caughin/Hawthon that give rise to relief above a speculative level. Further, the allegations were at best conclusory statements. There is a violation report filed by Latham and Feaster, but there are no

allegations in the complaint of a constitutional violation with regard to this violation report and no injury or harm to the Plaintiff.

As for Defendants Gsell and Phillips, there are factual allegations against them in paragraph 30 of the Amended Complaint that they removed all Plaintiffs personal items including his religious materials and medication.  These allegations do not give rise to a constitutional violation, which will be discussed in more depth below. Therefore, Plaintiff's claims against Defendants Latham, Feaster, Gsell, Phillips, Davis and Caughin/Hawthon must fail.

### 3.      Defendants Kesling, Close, and Shifflett

There has been no Motion to Dismiss or, alternatively, Motion for Summary Judgment filed on behalf of Defendants Kesling, Close, and Shifflett. The undersigned will not address the claims in Count I against Defendant Close or the Claims in Count V against Close and Shifflett at this time since no motions are pending with regard to them. However, this does not preclude the Defendants from filing Motions for Summary Judgment in the future.

Plaintiff asserts that Defendant Kesling is being sued in his supervisory capacity. ECF No. 18 at 3.  Therefore, the dismissal of Defendant Kesling was discussed with the other Defendant supervisors above and in Count II below.

### C.      The Merits of Plaintiff's Claims

### 1.  COUNT I – Excessive Force by Defendant Close

Plaintiff contends that Defendant Close used excessive force when he deployed pepper spray on May 30, 2015, in violation of his constitutional rights. ECF No. 18 at 10 ¶32. Defendant Smith's response to this grievance finds no unprofessional behavior

by Defendant Close, and notes that a Use of Force Committee reviews all use of force incidents "to make sure that the incident was handled appropriately according to the policies of the WVDOC."  ECF 18-9 at 13. This grievance was denied at all levels. Id. at 11. Additionally, the Use of Force Committee concluded that the use of force "was minimal and justified."  ECF No. 53-1 at 1.  Further, Plaintiff alleged that Defendant Close acted alone, however, COII Herron was also present according to the Use of Force Committee Findings.  Id at 3. Plaintiff was taken to medical and was seen by LPN Donna Valencia after the incident but no medical records were attached to the Amended Complaint. Id. at 11.

As previously stated, Defendant Close has not filed a Motion to Dismiss, or alternatively Motion for Summary Judgment; therefore, Count One remains an allegation solely against Defendant Close.

### 2.    COUNT II- SUPERVISORY LIABILITY

Count II was discussed above in the section on Plaintiff's Claims against Defendants Rubenstein, Plumley, Murphy, Kesling, and Smith.  As stated above, the law requires that Plaintiff demonstrate (1) that Defendants had knowledge of the events; (2) that the supervisor's response to the events was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices and (3) that a "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014) (internal citations omitted).  Defendants did not have knowledge of the alleged excessive force until after it occurred. After it was reported, the supervisors responded adequately by having the excessive force grievance reviewed by the Use of

Excessive Force Committee, where minimal justified force was found to be used. ECF No. 53-1 at 1.  Plaintiff's exhibits and Defendants exhibit confirm that these Defendants fully and properly investigated, then rejected as meritless, Plaintiff grievances concerning (1) denial of medications, (2) destruction and denial of his religious materials and harassment and retaliation as well. ECF No. 18-1-9 and ECF No. 53-1.

There is no genuine issue that there is no supervisory liability claim in this case and therefore, Plaintiff's claims against Rubenstein, Plumley, Murphy, Smith and Kesling as to Count II are without merit and should be dismissed.

### 3.    COUNT III-DENIAL OF MEDICATIONS

Plaintiff claims that on four occasions when his cell was searched,  Defendants Close, Gsell, Phillips and possibly other unnamed defendants seized his medications and kept them for an unspecified period of time, before returning them with his  other belongings. ECF No. 18 at 5, ¶ 16; 9, ¶30; 11, ¶36; and 13, ¶¶45-46. Count III also alleges that the remaining Defendants "clearly knew of the  plaintiff's medical condition;" were deliberately indifferent to Plaintiff's serious medical need; and "ignored, denied, prevented, and failed to provide plaintiff medication and serious medication condition [*sic*]." Id. at 17 ¶¶70-73. It  further   alleges   that   these Defendants' actions were "willful, wanton, intentional, and malicious  and done with callous, reckless and deliberate  indifference to plaintiff's safety." Id. at 17 ¶73.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976).   The Supreme Court in

Estelle explained that such deliberate indifference ranges from, "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id. To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently grave," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). The Fourth Circuit restated the rule as, "The first prong is objective and requires that the deprivation be 'sufficiently serious'; the second requires us to determine whether subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016) (internal citations omitted).

As to the first prong, a serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). As to the second prong, a prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

"It is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. . ." Whitley v. Albers, 475 U.S. 312, 319 (1986) (citations omitted; internal quotation marks omitted). A constitutional violation is established when "government officials show

19

deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health."   Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003)).

The Amended Complaint does not identify either the medical condition at issue or Plaintiff's serious medical need. Further it does not specify what medication or medications were denied him, how often he was to take such medication, and what injury the denials of medication caused, other than "extensive and unnecessary pain and suffering."  Id. at 14 ¶54.  Plaintiff's claims, however, are undermined by his own statements in his first of two grievances concerning the seizure of his medications, in which he describes those "medications" as "Tums, creams, and lotions."  See ECF No. 18-9 at 15.  When responding to this grievance, Defendant Plumley more specifically identifies the "medications" as "hydrocortisone cream and tums." ECF No. 18-9 at 16.

Accordingly, the Plaintiff satisfies neither prong of the Eighth Amendment cruel and unusual punishment claim.  Plaintiff alleges that he has gone up to 72 hours without his "…tums, creams and lotions, which without can cause pain and suffering." ECF No. 18-9 at 15. The Plaintiff cannot show that the denial of these medications for up to 72 hours was a deprivation of a basic human need that was "sufficiently grave."  These medications are generally considered over the counter medications that are used on an as needed basis.  The first prong of the analysis requires a serious medical condition that has been diagnosed by a physician mandating treatment or is obvious to a lay

person that a doctor's attention is needed.  The Plaintiff does not assert that he has a serious medical condition.  As for the second prong, there is no substantial risk in harm if the Plaintiff did not use his hydrocortisone or tums since it was prescribed on an as needed basis. Therefore, a prison official cannot be held liable since the risk of harm to Plaintiff by taking the medications for up to 72 hours were insubstantial or nonexistence.

In his second grievance, Plaintiff requests to keep his creams and Tums while on strip cell status. Id. at 29-31.  He complains that the prior grievance of this issue was not handled appropriately, but that Defendant Smith "was going to write a memo so the next time I could keep my creams and tums as long as I was using them for there [*sic*] purpose and not rubbing them on the windows." Id. at 30.  In response, Defendant Smith agrees Plaintiff can now have these medications while on strip cell status. Id. at 31.  Thereafter, Plaintiff does not allege that he has been denied medication.

The Court finds that there is no genuine issue of material fact as to Count III. Plaintiff's medications were taken while on strip cell status, but there is no allegation that any injury occurred as a result thereof.  Furthermore, there is simply no allegation that would support a finding that Plaintiff suffers from a serious medical condition, and the medications that were allegedly taken do not suggest otherwise. Plaintiff has been allowed his tums, and creams while on strip status since June 30, 2015. ECF No. 18-9 at 31. Accordingly, the relief requested in Count III should be DENIED and those allegations be dismissed as to all Defendants.

### 4.   COUNT IV- DENIAL OF RELIGIOUS MATERIALS

Plaintiff alleges violation of his constitutional right and  of his  right  under  the Religious  Land  Use  and  Institutionalized  Persons  Act  ("RLUIPA")  to  possess his religious materials. He also alleges Defendants' destruction and denial of his access to his  religious materials and Defendants' failure to timely return them.  ECF No. 18 at 16, ¶5; 9, ¶30; 11, ¶36; 13,  ¶¶45-46.

Plaintiff does not name any specific Defendants in ¶¶74-77 that were actually present or participated in  the searches and seizures, but instead claims in Count IV that  all  named  Defendants  "intentionally  destroyed,  damaged,  confiscated,  and denied the plaintiff his religious materials." ECF No. 18 at 17-18, ¶75. Count IV also alleges that these Defendants' actions were "willful, wanton, intentional,  malicious and done with callous disregard of plaintiff's constitutional rights."  ECF No. 18 at 18, ¶77.

**First Amendment: Free Exercise Clause Violation**

Prisoners retain their constitutional rights to freedom of religion pursuant to the First Amendment.  See Turner v. Safley, 482 U.S. 78, 84 (1987) (stating that "[p]rison walls  do  not  form  a  barrier  separating  prison  inmates  from  the  protections  of  the Constitution.").  As such, prisoners must be given "reasonable" opportunities to practice their religion.  Cruz v. Beto, 405 U.S. 319, 322 (1972).  However, the Supreme Court has further cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration."  Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006) (citing Procunier v. Martinez, 416 U.S. 396, 405 (1974)).  Thus, "courts must accord deference  to  the  officials  who  run  a  prison,  overseeing  and  coordinating  its  many

aspects, including security, discipline, and general administration." Id. (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987); Turner, 482 U.S. at 84-85).

In order to achieve this deference, in part, the Supreme Court revisited the level of scrutiny applied to constitutional claims raised by people currently incarcerated. The Supreme Court thus held that when an incarcerated person alleges a prison regulation or policy violates their constitutional rights, the "regulation is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89 (defining the appropriate standard as requiring rational basis, not strict scrutiny analysis). In lowering the standard of review, the Court reasoned that "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." Id.

The Turner court laid out four factors for the court to consider when "determining the reasonableness of the regulation at issue." Id. The test asks:

(1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

Lovelace, 472 F.3d at 200 (citing Turner, 482 U.S. at 89–92 (internal quotation marks and citations omitted)). Therefore, when determining the reasonableness of a prison

regulation, the court must apply this four factor <u>Turner</u> test.

**RLUIPA, 42 U.S.C. §§ 2000cc *et seq.*.**

Plaintiff also alleges a statutory claim under the RLUIPA.  Congress enacted RLUIPA in 2000 "because it found that some prisons have restricted religious liberty 'in egregious and unnecessary ways.'" <u>Lovelace</u>, 472 F.3d at 182 (*citing* 146 Cong. Rec. S7775 (July 27, 2000) (joint statement of Sen. Hatch and Sen. Kennedy).  Thus, the RLUIPA guarantees incarcerated people greater freedom to engage in religious conduct than does the First Amendment.  According to RLUIPA, a government is prevented from imposing a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government demonstrates that the imposition of the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000cc-1; <u>see also</u> <u>Cutter v. Wilkinson</u>, 544 U.S. 709. 717 (2005) (upholding RLUIPA's constitutionality).  In sum, RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." <u>Cutter</u>, 544 U.S. at 718.

When analyzing a claim under RLUIPA, the court must determine whether the government program or activity at issue receives federal financial assistance.  *See* 42 U.S.C. § 2000cc-1(b)(1).  When analyzing the substance of the claim, the burden of persuasion is on the plaintiff to demonstrate that the "government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion."  42 U.S.C. § 2000cc-2(b).  Under RLUIPA, "religious exercise" is broadly defined as "any

exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).  Once the court determines whether the plaintiff's claim involves a "religious exercise," then the court must assess whether the burden was "substantial." 42 U.S.C. § 2000cc-2(b).  The Fourth Circuit followed the Supreme Court's guidance in First Amendment Free Exercise Clause cases and found that "for RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'"  Lovelace, 472 F.3d at 187 (citing Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718, 101 S.Ct. 1425 (1981)).

Once the plaintiff demonstrates that a government practice substantially burdens their exercise of religion, the burden shifts to the defendant to show that the government practice or policy is "the least restrictive means of furthering a compelling government interest."  See Id. at 189.  When applying the "compelling government interest" standard, the court must consider the "context" of the claim and apply the standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Id. at 189-90 (citing Cutter v. Wilkinson, 544 U.S. 709, 723, 125 S.Ct. 2113 (2005)).  The court is to pay particular consideration to security concerns.  Id.  Moreover, RLUIPA is not meant to "elevate accommodation of religious observances over an institution's need to maintain order and safety." Id.

25

The Amended Complaint does not specify the number or type of religious materials seized or destroyed, beyond Plaintiff's allegation that, when his cell first was searched, Defendant Close destroyed those "religious materials" by ripping some in half and by wetting the remainder. ECF No. 18 at 6, ¶¶18-22. When denying Plaintiff's grievance about these materials, Defendant Smith cites to controlling WVDOC Policy Directive 313.02, which restricts items that can be possessed by an inmate placed on strip cell status to "one set of clothing, one pair of shower shoes, mattress, pillow sheet, pillow case and blanket." ECF No. 18-9 at 19. Defendant Smith also explains that the materials were removed due to Plaintiff's own misconduct: "Your negative behavior is stopping you from having you[r] religious property in your cell." Id. The materials were lawfully taken from the Plaintiff; therefore, there was no constitutional violation.

Plaintiff filed a second grievance as to this issue, claiming that his "religious items" were taken from him between June 30, 2015 and July 2, 2015, precluding him from his "daily practice of [his] religion." Id. at 38-40. When denying Plaintiff's second grievance as to this issue, Defendant Smith repeated the limitations of Policy Directive 313.02. Id. at 40. Defendant Smith advised the Plaintiff: "You may practice your religion without your religious items in your possession while on strip cell status." Id. He also explained again that the materials were removed due to Plaintiff's own misconduct. Id.

The Court finds there is valid rational connection between the interest in keeping contraband out of cells and the WV DOC Policy Directive 313.02 which

restricts items when inmates are placed on strip cell search. Plaintiff was allowed alternative means of exercising his religion, just not possession of his religious book(s)[6] for the period of time they were removed. The policy with regard to removing all items from cell except those listed in directive is a reasonable method to monitor and seize contraband. Further, pursuant to RLUIPA, the taking of the book(s) for a period of time to ensure not contraband in the cell is not a substantial burden on the exercise of Plaintiff's religion and is the least restrictive means to ensure safety.

Plaintiff also claims destruction of his religious materials.   On April 5, 2015, Plaintiff claims that his religious materials were returned by COII Cuttright and dumped on his bed.  ECF No. 18 at 6, ¶¶18,19. Plaintiff claims his "troth"[7] was wrapped in a wet towel, destroying it.  Later in his amended complaint, Plaintiff asserts that his belongings were returned with tuna fish all over them but he does not say who returned them or whether any of the belongings were religious in nature. Id. at 10, ¶34.

The Court finds that there is no genuine issue as to any material fact as to Plaintiff's claims that he was denied his religious materials. The removal of the religious items were allowed pursuant to Operational Procedures and Policy Directives.  It is clear that restriction of items permitted prisoners confined to a strip cell is reasonably related to legitimate penological interests. Plaintiff was allowed to continue to practice his

---

[6] Plaintiff's Exhibits ECF No. 18-9 at 4, 5, 6, 9, 18 describes the items of grievance as being "books."  Some of the books may be religious in nature but one was referred to as "Mariams Websers Dictionary thesarys [sic]." ECF No. 18-9 at 4.

[7] Plaintiff does not explain what a troth is, and the undersigned has been unable to find sufficient information to reach an independent conclusion. The Plaintiff alleges that he is an Odinist, who is "sincere in his beliefs and has a strict daily religious routine.´ ECF No. 18 at 6. However, he provides no explanation as to what the routine is, or how prison officials have interfered therewith.

religious beliefs without his religious items and his religious items were restored to him when he was released from strip cell status. There is no dispute that a wet cloth was among the items returned to Plaintiff with his religious materials but there is no evidence that was an intentional or malicious act. ECF No. 18-9 at 4, 5, 6. Additionally, the officer who returned the religious items is not a named Defendant in this case. Accordingly, the relief requested in Count IV should be DENIED and those allegations be dismissed as to all Defendants.

### 5.    COUNT V -- HARRASSMENT AND RETALIATION

Finally, in Count V, Plaintiff claims harassment and retaliation. Specifically, he asserts that, when he filed grievances with respect to (1) the destruction and denials of his religious materials and (2) the denials of his medications, Defendants harassed him and retaliated against him for pursuing those grievances. ECF No. 18 at 18-19, ¶¶78-81. Although Count V does not allege any specific Defendants were present or that they participated in the retaliation or harassment, Count V alleges that all Defendants' actions were "willful, wanton, intentional, malicious and done with callous disregard of plaintiff's constitutional rights." ECF No. 18 at 18-19 ¶81. Additionally, Plaintiff asserts in ¶46 that twenty minutes after talking with Defendant Shifflett about a grievance against Defendant Close, Plaintiff's cell was stripped searched. ECF No. 18 at 11, ¶36.

As noted above, Plaintiff's Exhibits confirm his grievances concerning alleged harassment and retaliation were fully and properly investigated, then rejected as meritless. For example, when Plaintiff filed his final grievance, he alleges he "was

written up for airing [his] grievance. . . ." ECF No. 18-9 at 42. In response, Defendant Smith noted Plaintiff's "insolence/insubordination" and found that "[a]t no time were you [Plaintiff] punished due to airing a grievance." Id. at 43; See also ECF No. 18-9 at 26-28, 32-34, 35-37.

There is no genuine issue of material fact as to Plaintiff's harassment and retaliation claims against all Defendants except Defendants Close and Defendant Shifflett. Accordingly, the relief requested Count V should be DENIED and the allegations contained therein should be dismissed as to all Defendants except Defendants Close and Defendant Shifflett.

## V.   PENDING MOTION FOR TEMPORARY INJUNCTION

A preliminary injunction is "an extraordinary remedy that only may be awarded upon a clear showing that the plaintiff is entitled to such relief." Dewhurst v. Century Aluminum Co., 649 F.2d 287, 290 (4th Cir. 2011)(quoting Winter v. Natural Res. Def. Counsel, Inc., 55 U.S. 7 (2008)); see  Peterson v. National Telecommunications & Information Admin., 505 F. Supp.2d 313, 317 (E.D. Va. 2006)(quoting Direx Israel Ltd. V. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1992))(recognizing that "[a] preliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly demand it").

In order to obtain the extraordinary remedy of a preliminary injunction, the burden is on the moving party to demonstrate: (1) "that he is likely to succeed on the merits"; (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in his favor"; and (4) "that an injunction is in the public

interest." Dewhurst, 649 F.3d at 290 (internal quotation marks and citations omitted); See Direx v. Israel, 952 F.2d at 812)(indicating that the moving party bears the burden of demonstrating the propriety of a preliminary injunction). In Dewhurst, after setting forth the above four-part test, the United States Court of Appeals for the Fourth Circuit separately highlighted the fact that controlling precedent from the Supreme Court of the United States requires that a plaintiff "**clearly show**" that he is likely to succeed on the merits. Id. Winter, 555 U.S. at 22. (emphasis added.).

The demanding standard outlined above becomes even more exacting when a plaintiff seeks a preliminary injunction that mandates action, as contrasted with the typical form of a preliminary injunction that merely preserves the status quo pending trial. See East Tennessee Natural Gas Co. v. Sage, 361 Fed 3d  808, 828 (4th Cir. 2004) (quoting Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980)) (noting that 'mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demands such relief'). As recently explained by the Fourth Circuit:

> Ordinarily, preliminary injunctions are issued to "protect the status quo and to prevent irreparable harm during the pendency of the lawsuit or alternately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litg., 333 F.3d 517, 525 (4th Cir. 2003). Movant, however, seeks to alter the status quo by having a federal court order the Board to include his name on a primary election ballot. But such "[m]andatory preliminary injunctive relief in any circumstance is disfavored, and warranted only in the most extraordinary circumstances." Id. (citation omitted). Consequently, our "application of th[e] exacting standard of review [for preliminary injunctions] is even more searching when the relief requested "is mandatory rather than prohibitory in nature." Id.

Here, Plaintiff seeks a mandatory injunction requiring Defendants move him to a facility other than HCC, so that he can "complete my "[r]equired programming and be free from fear of retribution for exercising my Constitutional rights. ECF No. 86 at 1. Plaintiff is in the custody of the West Virginia Division of Corrections, and the decision as to his place and type of incarceration is within the purview of that department alone. This Court has no authority or jurisdiction to direct the West Virginia Department of Corrections to place Plaintiff in any particular facility. Accordingly, it is clear that he will not succeed on the merits.

## VI.   RECOMMENDATION

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendants' Rubenstein, Plumley, Murphy, and Smith **MOTION [ECF No. 52] to Dismiss, or alternatively Motion for Summary Judgment** as to the Amended Complaint be **GRANTED** and all claims in the Amended Complaint [ECF No. 18] be **DISMISSED as to Defendants Rubenstein, Plumley, Murphy, and Smith**. It is further

**RECOMMENDED** that all claims in the Amended Complaint [ECF No. 18] against **Defendant Kesling** be **DISMISSED** for the reasons stated above. It is further

**RECOMMENDED** that Defendants' **Latham, Feaster, Gsell, Phillips, Davis and Caughin/Hawthon MOTION [ECF No.66]** for Summary Judgment as to the Amended Complaint be **GRANTED** and all claims in the Amended Complaint [ECF No. 18] be **DISMISSED as to Defendants Latham, Feaster, Gsell, Phillips, Davis and Caughin/Hawthon.** It is further

**RECOMMENDED** at this time, that Count I and V of the Complaint remain against Defendant Close and Count V remain against Defendant Shifflett and that this

matter may proceed to trial with respect to those claims and those Defendants; It is further

**RECOMMENDED** that **Plaintiff's Motion for Temporary Injunction** [ECF No. 86] be **DENIED**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the Plaintiff by certified mail, return receipt requested, and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 14th day of July, 2017.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE